IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-273-FL

| | |
|---|---|
| GLORIA ALLEN MARTIN, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Gloria Allen Martin ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Plaintiff responded to Defendant's motion and the time for further filings has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be denied, Defendant's Motion for Judgment on the Pleadings [DE-25] be granted, and the final decision of the Commissioner be upheld.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability and DIB on August 17, 2010 (Tr. 69, 85), alleging disability beginning May 13, 2009 (Tr. 146). The application for a period of disability and DIB was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 69, 85, 97-98.) On July 18, 2012, a hearing was held before Administrative Law Judge Nicole S. Forbes-Schmitt ("ALJ"), who issued an unfavorable ruling on August 29, 2012. (Tr. 28, 23.) On October 7, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

**I.     Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial

2

evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3)).

3

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since May 13, 2009. (Tr. 16.) Next, the ALJ determined Plaintiff had the following severe impairments: "eating disorder with bulimia, Barrett's esophagitis, and major depressive disorder." (*Id.*) The ALJ also found that Plaintiff's history of alcohol abuse was a non-severe impairment. (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform work at all exertional levels but provided the following limitations:

> The claimant is restricted to simple, repetitive tasks with low non-rigid production quotas. She is limited to only occasional interaction with the public and coworkers. She also requires ready access to a bathroom.

(Tr. 18.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 19.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work as a housekeeper. (Tr. 22.)

### IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred in discrediting the opinions of Plaintiff's treating physicians. Second, Plaintiff asserts that the ALJ failed to give proper consideration to the testimony of the Vocational Expert ("VE") concerning Plaintiff's ability to work.

4

### A. Treating Physicians

First, Plaintiff contends that the ALJ erred in discrediting the opinions of Plaintiff's treating physicians and therapists. Specifically, Plaintiff contends that the ALJ incorrectly gave little weight to Plaintiff's GAF scores, which consistently ranged between forty and fifty.

Ordinarily, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2) (2013). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given to the treating physician's opinion by applying the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Therapists are "medical sources who are not 'acceptable medical sources.'" SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). However, [o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* The same factors that apply in evaluating a treating physician also apply when evaluating medical sources that are not "acceptable medical sources." *Id.* at 4-5.

Here, Plaintiff's treating psychiatrists and therapists provided the following GAF scores: November, 24, 2010 (GAF of 40); December 21, 2010 (GAF of 45); April 4, 2011 (GAF of 45); May 10, 2012 (GAF of 45-50); June 25, 2012 (GAF of 45-50); and July 25, 2010 (GAF of 45-50). (Tr. 378, 404, 420, 529, 531.) The only other medical opinions concerning Plaintiff's ability to work were from the consultative examiners. The ALJ assigned the GAF scores little weight and gave the following explanation:

> As for GAF scores from 45 to 50 in Exhibit 11F, the undersigned has accorded them little weight as they are unsupported by treatment notes and the weight of the medical evidence of record. These GAF scores were assessed in the three months after the claimant had re-started treatment after a period of absence and after she had stopped all medications except Wellbutrin. When the claimant is compliant with treatment, records indicate her symptoms appear better and stabilize. Thus, when viewed in context with the medical evidence of record, these low GAF scores are not consistent with the claimant's overall functioning.
>
> The undersigned has also given little weight to the GAF scores contained in records from North Carolina Solutions at Exhibit 8F. Although she has given a GAF score of 40 at her initial visit in November 2010, records indicate the claimant was not taking medications and records show she improved with treatment. A psychological assessment at Exhibit 8F prepared by her therapist, including a GAF of 48, has also been given little weight. Therapists are not considered "acceptable medical resources" pursuant to 20 CFR § 404.1513(a) and the opinions contained in the psychological assessment are not consistent with treatment records, which show improvement on Prozac and generally normal mental status examinations.

(Tr. 21-22.)

Plaintiff argues that the ALJ did not properly assess her depression and bulimia separately when weighing the treatment providers' medical opinions. Plaintiff acknowledges that the records reflect an improvement in Plaintiff's depression. However, Plaintiff contends that the mere fact that Plaintiff's depression improved is not an indicator that her bulimia improved. The Commissioner argues that the GAF scores apply to Plaintiff's ability to function under both her depression and her bulimia. The Commissioner further contends that there is a connection between both impairments, such that total separation would not be entirely appropriate.

The evidence here supports that Plaintiff purges daily and appears to have purged daily from 2010 to 2012. The ALJ has taken this into account in the RFC by requiring that Plaintiff have ready access to a bathroom. The ALJ has appropriately explained the weight assigned to the GAF scores, indicating that they are inconsistent with the medical records, that Plaintiff has shown improvement while on medication, and that her low scores coincide with periods in which she is not medicated. There is no medical opinion which addresses how Plaintiff's bulimia alone affects her ability to work. The ALJ has taken the assessments of Plaintiff's treating physicians into account as evidenced by the RFC limitation that she have ready access to a bathroom. Accordingly, the ALJ appropriately assessed the GAF scores supplied by Plaintiff's treatment providers.

### B. Vocational Expert

Plaintiff next contends that the ALJ erred by failing to give proper consideration to the testimony of the VE. The purpose of a VE's testimony is to assist the Commissioner in determining whether there is other work available in the economy that a claimant can perform. Such an opinion is relevant and helpful only if it is "based upon a consideration of all other evidence in the record" and is "in response to proper hypothetical questions which fairly set out all

7

Case 7:13-cv-00273-FL   Document 29   Filed 01/28/15   Page 7 of 11

of [the] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1998). The Commissioner may not rely upon a vocational expert's opinion where the hypothetical question posed does not "fit the facts" of the case. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

Relying on *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987), Plaintiff argues that it was improper for the ALJ to rely on the VE's testimony that Plaintiff could return to her work as a housekeeper. *Smith* held that a vocational expert does not become relevant under the social security regulations until "*after* a claimant is found unable to do her past relevant work." *Smith v. Bowen*, 837 F.2d at 637 (4th Cir. 1987) (citing 20 C.F.R. § 404.1566(e)). However, the regulations have since been amended to provide specifically for use of a VE at step four:

> We may use the services of vocational experts . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, wither as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2) (2014).

Here, the VE testified that Plaintiff's previous work included that of a waitress in an informal setting, a fast-food worker, a housekeeper, and an assembler of computer parts. (Tr. 47-48.) Next the ALJ presented several hypotheticals to the VE:

> ALJ: Okay. All right, so assume for me please a person of the claimant's age, education, past work as you just described, who has no exertional limitations, but is limited to simple, repetitive tasks in a low-production environment, also with only occasional interaction with the public and co-workers. With those restrictions, can a person perform any of the claimant's past jobs?

8

> VE: Your honor, the only job that would be within the limits of the hypothetical would be that of a housekeeper.
>
> ALJ: Okay. Now assume for me, please, a person, again with the claimant's age and education, past work is limited to a medium residual functional capacity; however, can only occasionally reach overhead; can frequently, but not constantly use both upper extremities for pushing and pulling, also fine and gross manipulation; this individual must – can only occasionally bend and twist; and then also limited to the simple repetitive tasks, low production, occasional interaction with the public and co-workers. With those restrictions, can a person perform any of the claimant's past jobs?

(Tr. 47-49.) The VE responded that such an individual would not be able to perform Plaintiff's past work, but could perform the work of a machine tender and parts cleaner. (Tr. 49.) The ALJ then asked if any work was available for such an individual at the light level. (*Id.*) The VE testified that the positions of (1) product tester and weigher and (2) grader and sorter were available. (*Id.*) The ALJ then asked if the occupation of housekeeper allowed for ready access to a bathroom. (Tr. 50.) The VE responded in the affirmative. (*Id.*) The VE explained further that the other positions mentioned did not allow for as easy access to the bathroom. (*Id.*)

Plaintiff's attorney then asked the VE hypothetical questions, including, in pertinent part:

> ATTORNEY: And with respect to the issue of food at the workstations with the jobs that you listed, is there any limitation on – with respect to the person eating consistently throughout the day as explained by the claimant today?
>
> VE: That's not really something that's addressed generally in an employment setting. Most employers sort of give a wink and a nod to that depending on the work situation you're in. Now certainly, if it becomes intrusive that you're spending your time eating instead of working, that's going to be a problem, and you're not going to be able to work under those conditions. . . .
>
> . . . .
>
> ATTORNEY: Okay. And with respect to kind of interference from obsessive thoughts related to food to the point where it distracts from work production up to an occasional basis, would that cause any problems with any of the job?

9

> VE: Well, again, if we're looking at occasional by the Social Security definition, a third of the day –
>
> ATTORNEY: Mm-hmm.
>
> VE: -- yeah, if you get near that point, you're not able to work, you're just not able to attend to the job whether it be from that distraction or anything else.

(Tr. 52.)

Plaintiff argues that "the appropriate testimony from the VE that should be applied in this case is the testimony that is consistent with the opinion of the treating psychiatrist and treating therapists." However, there are no opinions from Plaintiff's treatment providers included in the record concerning how Plaintiff's bulimia affects her work capabilities. Furthermore, there is no indication in the medical record that Plaintiff spends a third of the day distracted by thoughts of food or the extent to which Plaintiff purges daily. The ALJ presented a hypothetical to the VE and added a requirement that Plaintiff have ready access to a bathroom, as there is substantial evidence in the record that Plaintiff suffers from severe bulimia. The ALJ then appropriately relied on relevant VE testimony that Plaintiff could perform past relevant work as a housekeeper in reaching her disability determination.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 28th day of January 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge