IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-273-FL

| | | |
|---|---|---|
| GLORIA ALLEN MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 23, 25). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's final decision. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and grants defendant's motion for judgment on the pleadings.

**BACKGROUND**

On August 17, 2010, plaintiff filed application for a period of disability and disability insurance benefits, alleging disability beginning May 13, 2009. The claim was denied initially and upon reconsideration. Plaintiff subsequently filed a written request for hearing. Following hearing, on August 29, 2012, an Administrative Law Judge ("ALJ") denied plaintiff's application. On

October 7, 2013, the appeals council denied plaintiff's request for review. Plaintiff filed the instant action on December 22, 2013.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for the Commissioner's. Craig, 76 F.3d at 589.

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do

2

not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 13, 2009, the date of alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: eating disorder with bulimia, Barrett's esophagitis, and major depressive disorder. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the listings in the regulations. Prior to proceeding to step four,

the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations restricting her to simple, repetitive tasks with low non-rigid production quotas, only occasional interaction with the public and coworkers, and ready access to a bathroom. In making this assessment, the ALJ found plaintiff's statements about her own limitations not fully credible. At step four, the ALJ concluded plaintiff was capable of performing past relevant work as a housekeeper.

B.  Analysis

The M&R rejected plaintiff's arguments that the ALJ had erred in failing to properly account for the vocational expert's (VE) testimony, and in discrediting Global Assessment of Functioning ("GAF") scores that treating physicians and therapists attributed to plaintiff. Plaintiff's objections relate to both arguments rejected by the M&R.

1.  VE Testimony

Plaintiff first argues that the ALJ should have been required to include additional restrictions in the hypothetical question presented to the VE. Specifically, plaintiff alleges that the record supported that she "spends at least a third of her day obsessed with food, binging and purging." (Obj., 3) (DE 30). For support, plaintiff cites to treatment records from her psychiatrist, Dr. Theresa Hueholt, who noted at various times that plaintiff was "[c]onstantly focusing" on food or weight, (Tr. 398, 399, 402), and reported binging and purging after every meal. (Id., 403). At hearing, plaintiff testified that she eats 10-15 times per day, and spends four to five hours eating and throwing up. (Id., 39). When specifically asked how her eating disorder would affect her job performance,

4

plaintiff testified that she "would have to get up to go to the bathroom or either . . . have a bottle sitting there . . . to get sick in it." (Id., 44). Plaintiff also testified that she "think[s] about food all day long." (Id., 45). She testified that, because of these thoughts, she would only be able to concentrate on the job for "30 minutes at the most maybe." (Id., 45).

Questions posed to a VE should be based upon consideration of all relevant record evidence, and fairly set out all of a claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). Plaintiff bears the burden of presenting evidence about any medical impairments, as well as how those impairments "effect . . . [her] ability to work on a sustained basis." 20 C.F.R. § 404.1512; Pass 65 F.3d at 1203 ("The applicant bears the burden of production and proof during the first four steps of the inquiry."). Here, the only evidence specifically quantifying the actual amount of time plaintiff spent "obsessed with food, binging and purging" was plaintiff's own testimony.

First, it should be noted that plaintiff's proposed addition to the hypothetical would be unhelpfully vague and abstract to the VE. As noted, the hypothetical is to reflect plaintiff's RFC. See Johnson, 434 F.3d at 659. The RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545. Yet plaintiff's proposal does not set out any kind of impairment in function or capacity showing what plaintiff could or could not do. While one might presume that purging is exclusive with performing work tasks, it is not clear whether thoughts of food or binging preclude simultaneously performing other types of work. Nor is not clear how much time plaintiff spent obsessed with food, how much time she spent binging, and how much time

5

she spent purging. Plaintiff failed to present any medical opinions reflecting how her disorder precluded her from performing specific tasks, and her own testimony consists only of general assertions.

Furthermore, the ALJ's reasoning followed the proper legal procedures and had the support of substantial evidence, posing a RFC that had sufficient supporting evidence. In analyzing plaintiff's impairments, the ALJ must engage in a two-step evaluation process. First, the ALJ must examine the objective medical evidence of an impairment reasonably likely to cause disability. After the claimant has met this threshold obligation, the ALJ then considers the claimant's subjective claims about the intensity, persistence, and disruptiveness of her impairments in the light of all the available evidence. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 595–96. At this second step, the ALJ must assess the credibility of the claimant's complaints in relation to all the evidence in the record. Craig, 76 F.3d at 596.

The ALJ properly followed the two-step process with respect to the disruptive impact that plaintiff's mental state had on her ability to function. The ALJ considered plaintiff's subjective claims in relation to the record evidence, thoroughly discussing the record regarding plaintiff's psychiatric treatment.[1] The ALJ noted that records from North Carolina Solutions dated December 2010 to November 2011 indicated that plaintiff's condition improved with medication. (Tr. 20); see

---

[1] While not a point raised in plaintiff's objections, the court notes that the ALJ's characterization of these records is not entirely accurate. The ALJ states that "[t]reatment records from North Carolina Solutions from November 2010 through November 2011 report that the claimant focused on food and her weight; however, she reported she was not binging/purging after every meal." (Tr. 20-21). In fact, as noted, plaintiff did report binging and purging "after every meal" in December 2010 (Id., 403). However, in light of the more recent records supporting the ALJ's characterization that plaintiff was not purging after every meal and supporting the ALJ's overall conclusion that plaintiff's condition was improving, remand for further discussion on this issue would be futile. The ALJ's error in mischaracterizing the December 2010 report was harmless.

6

Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Initially, plaintiff reported that she was "purging every meal." (Tr. 403). In February 2011, plaintiff reported that she could not " 'stop' eating dis[order] & binging more," and was taking water pills[2] "every other day." However, as the ALJ observed, notes from March 2011 report that plaintiff was "[d]oing some better [sic] w/eating dis[order]; still purging occasionally but not every meal like she was." (Id., 20, 401). The following month, plaintiff reported that she was "binging/purging daily & still occ[asionally] taking water pill[s]," but do not report purging after every meal. (Id., 400). In June, plaintiff again reported that she was "[n]ot binging/purging 'every meal' like she used to," although she was again " 'back to taking water pills' . . . . (2-3/d[ay] from mother's meds)." (Id., 399). In August, she was "[s]till binging, purging freq[uently]" but "[n]ot taking water pills like she was." (Id., 398). The notes from plaintiff's final two visits at North Carolina Solutions in September and November 2011 indicate that she continued to battle with an eating disorder, but do not corroborate the severity that plaintiff testified to at her hearing, i.e. that plaintiff was purging after every meal, or that these activities were occupying four to five hours of her day.

The ALJ noted that records from RHA Health Services, Inc. in May, June, and July 2012, showed that plaintiff continued to report purging. (Id., 21). But as the ALJ also observed, these three months followed a six month period during which plaintiff apparently had not been receiving treatment. It further appears that plaintiff discontinued her Prozac treatment in November 2011, and did not obtain a substitute form of medication, Wellbutrin, for several months. (Id., 396, 509, 535).

---

[2] Water pills are a type of diuretic which bulimics use to purge food from their bodies. Bulimia, National Institutes of Health, http://www.nlm nih.gov/medlineplus/ency/article/000341 htm (last visited March 23, 2015).

Furthermore, these records again fail to corroborate that plaintiff's condition was as severe as she represented at her hearing, with respect to her reports of purging after every meal, and spending four to five hours every day binging and purging. (Id., 508-33).

The ALJ's assessment of plaintiff's obsessive thoughts about food also has the support of substantial evidence in the record. First, it should be noted that the ALJ did not completely discount these thoughts, but found that plaintiff had "moderate difficulties" with respect to concentration. (Id., 17). Records do support that serious impairments exist. Plaintiff's treatment records note that she had obsessive thoughts of food, as plaintiff asserts (Id., 398, 399, 402). During a consultative psychological examination in October 2010, Dr. Reuben Silver, Ph.D., reported that cognitive examinations indicated plaintiff had "significant difficulty with attention." (Id., 366). However, as noted above, plaintiff did not present evidence of the functional impact from her thoughts of food, outside of her general assertions that she thinks about food "all the time" and her own estimates that she would only be able to concentrate on the job for "30 minutes at the most." (Id., 45). Plaintiff did not provide specific examples of how her thoughts of food had prevented her from engaging in any specific activities. In contrast, the ALJ cited evidence that plaintiff read the Bible, crocheted, and watched the religious television channel Trinity Broadcasting Network. (Id. 19). Plaintiff reported that she could vacuum, wash dishes, and do laundry. (Id.). The RFC reflects the moderate attention and concentration difficulties that the ALJ found, in that plaintiff was "restricted to simple, repetitive tasks with low non-rigid production quotas." (Id., 18). Plaintiff failed to produce evidence that more serious restrictions were warranted.

8

Case 7:13-cv-00273-FL   Document 31   Filed 03/24/15   Page 8 of 11

The ALJ also remarked upon another reason to doubt the credibility of plaintiff's claims that thoughts of food, binging and purging would more seriously impair her ability to work. Plaintiff accepted unemployment benefits after the onset date of her disability. (Id.). Plaintiff testified that, when she applied for unemployment, she certified that she was "ready, willing, *and able* to work." (Id., 35) (emphasis added). Although the "receipt of unemployment compensation does not in itself prove ability to work," Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965), numerous courts within this circuit have held that the acceptance of unemployment benefits may weigh against an individual's credibility. See Mabe v. Colvin, No. 4:12-CV-52, 2013 WL 6055239, at *8 & n.11 (W.D. Va. Nov. 15, 2013) (collecting cases).

The evidence regarding plaintiff's improvement with medication, daily activities, and receipt of unemployment benefits, as well as the *lack* of evidence supporting plaintiff's claim that she spends four to five hours a day eating and throwing up or that her obsessions with food imposed more severe restrictions, constitutes "substantial evidence" supporting the ALJ's decision not to include an additional limitation that plaintiff "spends at least a third of her day obsessed with food, binging and purging" in the hypothetical presented to the VE.

2. GAF Scores

Plaintiff next argues that the ALJ improperly discounted plaintiff's GAF scores in making a RFC determination. The GAF scale is the scale used in the psychiatric evaluation system endorsed by the American Psychiatric Association. Revised Med. Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764 (Aug. 21, 2000) ("Revised Criteria"). The score measures a person's overall psychological, social, and occupational functioning. Williams v.

9

Colvin, No. 4:13-CV-259-D, 2015 WL 631250, at *8 n. 6 (E.D.N.C. Feb. 12, 2015) (citing Am. Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000)). Scores range from 0-100, with 100 being the highest level of functioning. Hill v. Colvin, No. 4:13-CV-211-FL, 2015 WL 226035, at *8 n. 3 (E.D.N.C. Jan. 16, 2015). As is pertinent here, scores from 41-50 reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Williams, 2015 WL 631250, at *8 n. 6. These scores "do[ ] not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." Revised Criteria, at 50,764-65. However, they represent opinions that should be considered along with all of the record evidence. Koisch v. Astrue, 650 F. Supp. 2d 475, 490 (E.D. Va. 2009); see also Beasley v. Astrue, No. 7:10-CV-232-FL, 2012 WL 707091, at *5 (E.D.N.C. March 5, 2012) ("While . . . some courts consider GAF scores to be relevant evidence of a claimant's ability to work, neither agency regulations nor case law requires an ALJ to determine the extent of a claimant's mental disability based entirely on GAF scores.") (citing Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

The ALJ noted that plaintiff scored in the 40-50 range on several occasions, but explained that these scores received little weight because they lacked the support of treatment notes and the weight of the record medical evidence, and also because the GAF scores "were assessed in the three months after the plaintiff had re-started treatment after a period of absence and after she had stopped all medications *except Wellbutrin*." (Tr. 21-22) (emphasis added). Plaintiff objects to the use of her treatment gap as a basis for discounting the GAF scores, noting that one such score was assigned

10

when she was taking Wellbutrin (Obj., 4). As the language just quoted demonstrates, however, the ALJ expressly accounted for the fact that plaintiff continued to take Wellbutrin for at least part of this period. Thus, the ALJ's analysis accounted for the fact that plaintiff was on Wellbutrin at the time of the GAF score in May 2012. Elsewhere, as discussed above, the ALJ observed how plaintiff's mental status had improved when she regularly received treatment from November 2010 to November 2011. (Tr. 20). The discussion reflects that the ALJ found plaintiff's symptoms improved when she regularly received treatment. The fact that plaintiff may have registered some poor scores while on Wellbutrin does not controvert this reasoning.

The discussion reflects that the ALJ considered the GAF scores in light of other evidence of record, and concluded they were not determinative. Substantial evidence supported this determination.

## CONCLUSION

Based on the foregoing, upon *de novo* review of the portions of the M&R to which specific objections were raised, and upon considered review of the remainder, the court ADOPTS the M&R in full. The court DENIES plaintiff's motion for judgment on the pleadings (DE 23), and GRANTS defendant's motion for judgment on the pleadings (DE 25). The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge